**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

LUKE MAUST,                     :
                                     :
       Plaintiff,            :
                                       :
v.                              :       CIVIL ACTION NO.
                                     :       1:11-CV-01761-RWS
UNITED PARCEL SERVICE    :
GENERAL SERVICES CO.,     :
                                     :
       Defendant.       :

## ORDER

This case comes before the Court on Defendant United Parcel Service

General Services Co.'s ("UPS" or "Defendant") Motion for Summary Judgment

[43]. After reviewing the record, the Court enters the following Order.

## Background

Plaintiff filed this action against Defendant, Plaintiff's current employer,

alleging discrimination and retaliation in violation of the Age Discrimination in

Employment Act ("ADEA"), 29 U.S.C. § 621, et seq. (See generally Am.

Compl., Dkt. [3].) The following facts are taken from Defendant's Statement of

Material Facts For Which There Is No Genuine Issue To Be Tried ("Statement

of Material Facts" or "SMF") and, except where otherwise indicated, are undisputed.

Plaintiff is a current employee of Defendant, who works in Defendant's Information Services ("IS") business unit.[1]  (Def.'s SMF, Dkt. [43-2] ¶ 3.)  In April 2004, Plaintiff began working as the Infrastructure Systems Manager in the IS department of Defendant's Supply Chain Solutions ("SCS") business unit.  (Id. ¶ 5.)  This was a grade 91 position.  (Id.)  (IS jobs are grouped by Grade Level.  (Id. ¶ 9.).)  Before 2007, several of Defendant's business units had their own, separate IS departments, including, for example, the SCS business unit, UPS Freight, and UPS Small Package.  (Id. ¶ 6.)  In 2007, however, Defendant consolidated its separate IS departments into a single IS organization.  (Id. ¶ 7.)  As a result of this consolidation, the SCS IS group was absorbed into the consolidated IS organization.  (Id.)

As part of this consolidation, in mid-2007, the SCS IS Infrastructure group that Plaintiff managed in his capacity as Infrastructure Systems Manager was dismantled.  (Id. ¶ 8.)  The employees who had reported to Plaintiff were

---

[1] Defendant explains that the "IS" business unit is UPS's equivalent of an "IT" (Information Technology) department.  (Def.'s Br. in Supp. of Def.'s Mot. for Summ. J. ("Def.'s Mem."), Dkt. [43-1] at 2 n.2.)

split among several other existing groups and Plaintiff's job was eliminated. (Id.)  At the time his job was eliminated, there were no grade 91 positions in IS for Plaintiff to assume.  (Id. ¶ 9.)

In order to protect Plaintiff from immediate demotion or potential layoff, Laurie Johnson, Defendant's former Vice President of Information Services (Decl. of Laurie Johnson ("Johnson Decl."), Dkt. [43-4] ¶ 4), assigned Plaintiff to work temporarily on the application component of the IS consolidation. (Def.'s SMF, Dkt. [43-2] ¶ 9.)  Subsequently, in the fall of 2007, Ms. Johnson recommended Plaintiff for a special assignment to teach at the UPS Corporate Schools for the 2008 training session.  (Id. ¶ 10.)  Plaintiff was available to take this position at the end of 2007 because he did not have a permanent position in his assigned department.  (Id.)  His special assignment as an instructor in Corporate Schools was temporary, running from January 2008 to the end of 2008.  (Id. ¶ 10-11.)  While Plaintiff was on special assignment in Corporate Schools, his primary assignment was still to the UPS Supply Chain Solutions Portfolio of IS.  (Id. ¶ 12.)

Plaintiff attempted in 2008 to find a permanent position for himself but was unable to do so.  (Id. ¶ 13.)  Ms. Johnson also assisted in this effort by

3

examining her portfolio in search of an available position for which Plaintiff could be considered. (Id. ¶ 13.) The highest level position that Ms. Johnson identified in her portfolio was an Application Project Leader position of GIC[2] Support Manager–a grade 81 position.[3] (Id.; Johnson Decl., Dkt. [43-4] ¶ 11.)

In January 2009, Plaintiff began working in the Application Project Leader position. (Id. ¶ 14.) He was not reclassified to the grade 81 level at that time but was told that he would be reclassified if he could not find another position by October 2009. (Id. ¶ 14.) In approximately June 2009, Ms. Johnson learned that the person who held the position of Data Center Manager for the Windward Data Center (Kevin Cooney), a grade 91 position, was going

---

[2] Defendant does not explain what "GIC" stands for, nor does the Declaration of Ms. Johnson, upon which Defendant relies as support for this fact.

[3] Defendant states in its Statement of Material Facts, "The highest level available position that Ms. Johnson identified was an Application Project Leader position of GIC Support Manager. . . . This was a grade 81 position in Ms. Johnson's SCS portfolio of IS." (Def.'s SMF, Dkt. [43-2] ¶ 13 (citing Johnson Decl., Dkt. [43-4] ¶¶ 11-13).) Plaintiff purports to dispute this fact, claiming that "Ms. Johnson contacted Jim Medeiros concerning the soon to be vacant Data Center Manager position"–a grade 91 position. (Pl.'s Resp. to Def.'s SMF, Dkt. [46] ¶ 13.) Ms. Johnson declared, however, that the Application Project Leader position of GIC Support Manager was the highest level position available *in her portfolio*. (Johnson Decl., Dkt. [43-4].) Defendant does not dispute that Ms. Johnson also contacted Mr. Medeiros, at a later date, regarding the Data Center Manager position. (Def.'s SMF, Dkt. [43-2] ¶¶ 21-22.) This is discussed below.

4

to be retiring in late 2009 or early 2010.  (<u>Id.</u> ¶ 21; Johnson Decl., Dkt. [43-4] ¶ 17.)  The Data Center Manager position was not in the SCS IS portfolio that Ms. Johnson managed, but rather in the Shared Services portfolio, managed by Portfolio Manager Jim Medeiros.  (Def.'s SMF, Dkt. [43-2] ¶ 21.)  Ms. Johnson had no decision-making authority with respect to the Data Center Manager position, and she was not aware of all the necessary qualifications for the job.  (<u>Id.</u> ¶ 22.)  However, because she knew Plaintiff was seeking a grade 91 position, she recommended that Mr. Medeiros consider Plaintiff for the position.  (<u>Id.</u>)  Ms. Johnson thus provided Mr. Medeiros with Plaintiff's performance review and career development materials.  (<u>Id.</u>)

Mr. Medeiros deposed that he reviewed the materials Ms. Johnson provided and concluded that Plaintiff did not have the experience necessary for the Data Center Manager position.[4]  (<u>Id.</u> ¶ 23.)  Plaintiff ultimately was unable to locate another position and therefore was reclassified to grade 81, effective October 1, 2009.  (<u>Id.</u> ¶ 16.)  Each grade level of IS management jobs had a corresponding salary band that was applicable to all jobs at that grade level in a

---

[4] Plaintiff contends that Mr. Medeiros's testimony is "mere pretext for discrimination."  (Pl.'s Resp. to Def.'s SMF, Dkt. [46] ¶ 23.)  This argument is discussed in the Discussion section below.

particular geographic location. (Id. ¶ 18.) When Plaintiff was reclassified from a 91 to 81 grade level, his salary was reduced, in accordance with UPS policy, to be consistent with the salary band applicable to grade 81 employees in Georgia. (Id.) In an attempt to reduce the impact of the reclassification on Plaintiff, Ms. Johnson set his salary at the highest level possible for a grade 81 employee in Georgia.[5] (Id.)

Mr. Medeiros ultimately selected Angel Ramos, to fill the position of Data Center Manager. (Id. ¶ 24.) This selection was announced on November 12, 2009. (Pl.'s Statement Of Material Facts As To Which There Exist Genuine Issues of Material Fact To Be Tried ("Pl.'s Statement of Additional Facts"), Dkt. [47] ¶ 13.) Mr. Medeiros had identified Mr. Ramos as a candidate for the

---

[5] Plaintiff purports to dispute this fact by stating, "[Plaintiff] received a merit increase in 2011, after being told that he was at his maximum level in 2010 . . . ." (Pl.'s Resp. to Def.'s SMF, Dkt. [46] ¶ 18 (citing 11/22/11 Dep. of David McGlothlin ("McGlothlin Dep."), Dkt. [50] at 40:12-19).) The cited portion of Mr. McGlothlin's deposition testimony reads: "Q: Do you know who made the final decision on whether [Plaintiff] could receive the merit increase in 2011? A: The final person? Q: Yes, sir. A: I think from a process standpoint, they are signed off by all levels of management." Neither this testimony, nor Plaintiff's statement, creates a genuine factual dispute as to Defendant's assertion that Plaintiff was given the highest salary permitted by the grade 81 salary band at the time he was reclassified to a grade 81 position. (Indeed, Plaintiff agreed in his deposition that "as of the time that [he was] reclassified in October 2009, [his] salary was set at the maximum of the pay grade as it existed in 2009[.]" (1/24/12 Dep. of Luke Maust ("Pl.'s Dep."), Dkt. [43-6] at 240:13-17.).)

position in 2007, when Mr. Medeiros became aware that Mr. Cooney was considering retirement. (Def.'s SMF, Dkt. [43-2] ¶ 24.) For approximately one year prior to his selection as Data Center Manager, Mr. Ramos successfully had been working in the position of Mid-Range Operations Technology Manager in Defendant's New Jersey data center. (Id. ¶ 25.) Defendant states that Mr. Ramos had performed well in that position and demonstrated that he would be capable of remotely running the Windward Data Center.[6] (Id.) At the time Mr. Ramos was selected, Plaintiff was forty-six (46) years old (Pl.'s Resp. to Def.'s Mot. for Summ. J. ("Pl.'s Resp."), Dkt. [48] at 11), and Mr. Ramos was approximately forty (40) (Mem. in Supp. of Def.'s Mot. for Summ. J. ("Def.'s Mem."), Dkt. [43-1] at 20 of 28).

In March 2010, Plaintiff notified his immediate supervisor, Systems Manager David McGlothlin (Johnson Decl., Dkt. [43-4] ¶ 13), that he intended to file an ADEA claim with the EEOC. (Pl.'s Statement of Additional Facts, Dkt. [47] ¶ 27.) On the same day, Plaintiff learned that Mr. McGlothlin's

---

[6] Plaintiff purports to dispute this fact, arguing that Defendant's assertion that Mr. Ramos was found to be more qualified than Plaintiff is mere pretext for discrimination. (Pl.'s Resp. to Def.'s SMF, Dkt. [46] ¶ 25.) As stated in footnote 5, supra, Plaintiff's "pretext" argument is discussed in the Discussion section below.

request that Plaintiff receive a merit increase in salary had been denied.  (Id.)

Defendant states that this request was denied by Ms. Johnson, who was unaware

at the time that Plaintiff had expressed his intent to file a charge with the

EEOC.[7]  (Def.'s SMF, Dkt. [43-2] ¶ 19-20.)  Defendant explains that Plaintiff

was denied a merit increase because his salary was at the maximum level

permitted for his grade 81 position.  (Id. ¶ 19.)  On April 8, 2010, Plaintiff filed

a Charge of Discrimination with the EEOC.  (Id. ¶ 30.)

Mr. Ramos worked as Data Center Manager for approximately one year

and then requested reassignment to a position in New Jersey.  (Id. ¶ 26.)

According to Defendant, Mr. Ramos's departure gave Defendant the

opportunity to overhaul the requirements of the Data Center Manager position

---

[7] Plaintiff does not dispute that Ms. Johnson was unaware of Plaintiff's intent to file an EEOC charge at the time Plaintiff was denied a merit increase.  However, he purports to dispute the assertion that Ms. Johnson was the decision-maker responsible for denying Plaintiff the merit increase.  (Pl.'s Resp. to Def.'s SMF, Dkt. [46] ¶¶ 19-20.)  Plaintiff states, "During his deposition Mr. McGothlin [sic] did not state that Ms. Johnson was the individual who denied Plaintiff's request for a merit increase."  (Id. ¶ 19 (citing 11/22/11 Dep. of David McGlothlin ("McGlothlin Dep."), Dkt. [50] at 40:12-19).)  The cited portion of Mr. McGlothlin's deposition testimony reads, "Q: Do you know who made the final decision as to whether Mr. Maust could receive the merit increase between 2010 and 2011?  A: The final person?  Q: Yes, sir.  A: I think from a process standpoint, they are signed off on by all levels of management."  As explained in the Discussion section, infra, the Court finds this testimony insufficient to create a genuine factual dispute as to whether Ms. Johnson was the person who ultimately denied Plaintiff a merit increase.

8

to make it more strategic and more consistent with developing industry standards for data center management; one of the most important qualifications of the newly-designed position became multiple years of full-time management experience in a large data center.[8]  (Id. ¶ 26.)  It is undisputed that no UPS employee had sufficient data center management experience to be qualified for the newly-designed Data Center Manager position and that none was interviewed.  (Id. ¶ 27.)  Instead, Mr. Medeiros hired an external candidate, Orville Sweitzer, for the position.  (Id.)  At the time Mr. Sweitzer was hired, he had had eight (8) years of experience managing a very large data center for another company and was sixty (60) years old.  (Id.)

Finally, Plaintiff does not dispute that Ms. Johnson was born in 1955 and is almost ten (10) years older than Plaintiff.  (Id. ¶ 28.)  Similarly, Mr. Medeiros was born in 1954 and is more than ten (10) years older than Plaintiff.  (Id. ¶ 27.)

---

[8] Plaintiff disputes Defendant's explanation of its decision to overhaul the requirements of the Data Center Manager position.  (Pl.'s Resp. to Def.'s SMF, Dkt. [46] ¶ 26.)  Plaintiff contends, "When Mr. Ramos decided to vacate the position, it presented UPS with the opportunity to re-write the position in a manner that would ensure that Mr. Maust would not be able to meet the newly required credentials for the position."  (Id.)  This argument is addressed in the Discussion section, infra.

AO 72A
(Rev.8/82)

Following the foregoing events, Plaintiff filed a Complaint against Defendant, alleging discrimination and retaliation in employment in violation of the ADEA. In particular, Plaintiff contends that he was discriminated against based on age when, in 2009, Defendant did not select him for the Data Center Manager position but, instead, selected Mr. Ramos. (Am. Compl., Dkt. [3] ¶ 41; Pl.'s Resp., Dkt. [48] at 11-19.) He also appears to claim age discrimination based on Defendant's failure to select him for the Data Center Manager position in 2011, when Defendant hired Mr. Sweitzer.[9] (Pl.'s Resp., Dkt. [48] at 22.)

Plaintiff also claims that Defendant retaliated against him for filing a Charge of Discrimination with the EEOC by, first, refusing to give him a merit increase in salary in March of 2010 and, second, failing to select him for the Data Center Manager position in 2011, when Defendant hired Mr. Sweitzer. (Pl.'s Resp., Dkt. [48] at 19-24.) Defendant now moves for summary judgment

---

[9] Plaintiff also appears to have claimed ADEA discrimination based on (1) a 2004 or 2005 management incentive performance pay and performance evaluation; (2) his reclassification from the 91 to 81 grade level; and (3) his failure to be selected for the Corporate Schools Manager position. Defendant moved for summary judgment on these claims (Def.'s Mem., Dkt. [43-1] at 13-14, 16-20, & 23-24 of 28), and Plaintiff failed to respond. The Court, therefore, deems these discrimination claims abandoned. See, e.g., Burnette v. Northside Hosp., 342 F. Supp. 2d 1128, 1140 (N.D. Ga. 2004) ("Failure to respond to the opposing party's summary judgment arguments regarding a claim constitutes abandonment of that claim and warrants the entry of summary judgment for the opposing party.").

10

on all of Plaintiff's claims.  The Court sets out the legal standard governing a motion for summary judgment before considering Defendant's motion on the merits.

## Discussion

### I.  Summary Judgment Legal Standard

Federal Rule of Civil Procedure 56 requires that summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "The moving party bears 'the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'"  Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259 (11th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotations omitted)).  Where the moving party makes such a showing, the burden shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257  (1986).

AO 72A
(Rev.8/82)

The applicable substantive law identifies which facts are material. Id. at 248. A fact is not material if a dispute over that fact will not affect the outcome of the suit under the governing law. Id. An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 249-50.

Finally, in resolving a motion for summary judgment, the court must view all evidence and draw all reasonable inferences in the light most favorable to the non-moving party. Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th Cir. 2002). But, the court is bound only to draw those inferences which are reasonable. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (internal citations omitted); see also Matsushita, 475 U.S. at 586 (once the moving party has met its burden under Rule 56(a), the nonmoving party "must do more than simply show there is some metaphysical doubt as to the material facts").

AO 72A
(Rev.8/82)

## II.     Defendant's Motion for Summary Judgment [43]

Defendant moves for summary judgment on all of Plaintiff's claims.  The Court considers Defendant's motion with respect to Plaintiff's discrimination claims before turning to Plaintiff's claims for retaliation.

### A.     ADEA Discrimination

As stated in the Background section, supra, Plaintiff claims ADEA discrimination based on Defendant's failure to hire Plaintiff for the Data Center Manager position in 2009, when Defendant instead hired Mr. Ramos.  Plaintiff also appears to claim discrimination based on Defendant's failure to hire Plaintiff for the position in 2011, when Mr. Sweitzer was hired.  The Court sets out the legal standards governing claims for discrimination under the ADEA before considering Defendant's arguments that it is entitled to judgment as a matter of law on Plaintiff's discrimination claims.

#### 1.     *Legal Principles*

The ADEA declares it "unlawful for an employer to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such person's age."  29 U.S.C. § 623(a)(1).  This

13

prohibition on age discrimination applies to persons who are at least forty (40)

years of age.  Id. § 631.  Where, as here, a plaintiff seeks to prove age

discrimination based on circumstantial evidence, the analysis is governed by the

burden-shifting framework established by the Supreme Court in McDonnell

Douglas Corp. v. Green, 411 U.S. 792 (1973); Chapman v. AI Transport, 229

F.3d 1012, 1024 (11th Cir. 2000).  Under that framework, the plaintiff has the

initial burden of establishing a prima facie case of age discrimination.  Id.  In an

ADEA case involving demotion or failure to hire, such as this one, the plaintiff

may establish a prima facie case by showing: "(1) that he was a member of the

protected group of persons between the ages of forty and seventy; (2) that he

was subject to adverse employment action; (3) that a substantially younger

person filled the position that he sought or from which he was discharged; and

(4) that he was qualified to do the job for which he was rejected."  Turlington v.

Atlanta Gas Light Co., 135 F.3d 1428, 1432 (11th Cir. 1998).  "Establishment

of the prima facie case in effect creates a presumption that the employer

unlawfully discriminated against the employee."  Combs v. Plantation Patterns,

106 F.3d 1519, 1528 (11th Cir. 1997) (citation omitted).        Once the

plaintiff has established a prima facie case, the burden shifts to the defendant to

articulate a legitimate, nondiscriminatory reason for the challenged employment action. <u>Chapman</u>, 229 F.3d at 1024. This intermediate burden is "merely one of production; [the defendant] need not persuade the court that it was actually motivated by the proffered reasons." <u>Id.</u> (internal quotations and citation omitted). "It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." <u>Id.</u>

Finally, if the defendant carries this burden, the presumption of discrimination created by Plaintiff's <u>prima</u> <u>facie</u> case disappears. <u>Id.</u> The burden then shifts back to the plaintiff to show that the reasons proffered by the defendant were merely pretextual. <u>Combs</u>, 106 F.3d at 1528. That is, "the plaintiff has the opportunity to come forward with evidence, including the previously produced evidence establishing the <u>prima</u> <u>facie</u> case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment action." <u>Id.</u> (citations omitted). "If the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant employer's articulated reasons is pretextual, the employer is entitled to summary judgment on the plaintiff's claim." <u>Chapman</u>, 229 F.3d at 1024-25.

2.	*Analysis*

      **i.**    **Selection of Mr. Ramos for Data Center Manager in 2009**

Plaintiff contends that he was subject to age discrimination in violation of the ADEA when, in 2009, he was not selected for the Windward Data Center Manager position and Mr. Ramos was selected instead.  Defendant moves for summary judgment on this claim on grounds that even if Plaintiff could establish a prima facie case, Defendant has offered legitimate, nondiscriminatory reasons for its hiring decision, which reasons Plaintiff cannot show to be pretextual.  (Def.'s Mem., Dkt. [43-1] at 20 of 28.)

Defendant argues that Mr. Medeiros selected Mr. Ramos for the Windward Data Center Manager position because of his qualifications–in particular, his successful past experience working as Mid-Range Operations Technology Manager in Defendant's New Jersey Data Center.  (Id. at 20-21 of 28; Def.'s Reply Br. in Supp. of Def.'s Mot. for Summ. J. ("Def.'s Reply"), Dkt. [54] at 3-4 of 18.)  Defendant further points out that Mr. Ramos had worked in Mr. Medeiros's organization for many years and had been identified as a candidate for the position as early as 2007, when Mr. Medeiros first learned

that the Data Center Manager at the time was contemplating retirement. (Id. at 21 of 28.)

Plaintiff argues that this proffered reason for Defendant's selection of Mr. Ramos is merely a pretext for discrimination. (Pl.'s Resp., Dkt. [48] at 16-19.) The gravamen of Plaintiff's pretext argument is that he was equally qualified as Mr. Ramos for the Windward Data Center Manager position. (Id.) To this end, Plaintiff states that "[he] managed the same Scranton Data Center Operations Group that Mr. Medeiros identified as the position that made Mr. Ramos uniquely qualified to work in the position." (Id. at 17.) He continues:

> Clearly, the reason given by Mr. Medeiros for selecting Mr. Ramos is false, and therefore, pretext. Given that Mr. Maust managed the same data center that Mr. Medeiros identified as the reason Mr. Ramos was qualified for the position, it is simply impossible truthful [sic] state that Mr. Maust was not qualified for the position, while Mr. Ramos was. Moreover, Mr. Maust was on the team that developed the data center that he was determined to be unable to manage.

(Id. at 17-18.)

The Court agrees with Defendant that Plaintiff has failed to show pretext. As a threshold matter, Plaintiff has failed to point to admissible evidence in the record to support his assertion that he held the same position as that which

Defendant contends rendered Mr. Ramos uniquely qualified for the Windward Data Center Manager position. Indeed, Plaintiff contends, without citation to evidence, that he was equally qualified as Mr. Ramos because he managed the "same Scranton Data Center Operations Group." Defendant, however, never mentioned a "Scranton Data Center Operations Group"; on the contrary, Defendant selected Mr. Ramos because of his successful experience as "Mid-Range Operations Technology Manager" in Defendant's New Jersey data center–a position that Plaintiff never claims to have held.[10] Accordingly, Plaintiff's argument that he was equally qualified for the Data Center Manager position because he held the same position as Mr. Ramos fails.

More importantly, even if Plaintiff had shown that his qualifications were the same as those of Mr. Ramos, this would be insufficient to establish pretext. A plaintiff cannot establish pretext simply by showing that he is more qualified than the person who was awarded the desired position. Cofield v. Goldkist, Inc., 267 F.3d 1264, 1268 (11th Cir. 2001). "Rather, [the plaintiff] must adduce evidence that the disparity in qualifications is *so apparent as virtually to jump*

---

[10] Nor does Plaintiff put forward any evidence that these two positions are actually the same.

*off the page and slap you in the face*." Id. (internal quotations and citation

omitted) (emphasis added). "The relevant inquiry for [the Court], then, is not to

judge which employee was more qualified, but to determine whether any

disparity between [the employees'] managerial qualifications is so great that a

reasonable fact-finder could infer that [the defendant employer] did not believe

[the selected employee] to be more qualified." Id.  Plaintiff plainly has failed to

make this showing.

Finally, the Court notes that Mr. Medeiros, the decision-maker with

respect to the Data Center Manager position, is more than ten years *older* than

Plaintiff.  This fact strongly suggests–particularly given the dearth of evidence

to the contrary–that Mr. Medeiros was not motivated by discriminatory animus

when he selected Mr. Ramos over Plaintiff for the Data Center Manager

position.  This fact thus bolsters Defendant's argument that its proffered reason

for hiring Mr. Ramos is not a pretext for age discrimination.

In sum, Plaintiff has failed to produce sufficient evidence from which a

reasonable jury could find that Defendant's legitimate, nondiscriminatory

reason for hiring Mr. Ramos–i.e., his superior qualifications–is pretextual.

Defendant therefore is entitled to judgment as a matter of law on Plaintiff's ADEA discrimination claim.

### ii. Selection of Mr. Sweitzer as Data Center Manager in 2011

It also appears, as Defendant surmises, that Plaintiff may be claiming ADEA discrimination based on Defendant's failure to select Plaintiff for the Data Center Manager position in 2011, when Mr. Sweitzer was hired for the position.  (See Pl.'s Resp., Dkt. [48] at 22 (arguing ADEA discrimination based on Defendant's selection of Mr. Sweitzer).)  The Court agrees with Defendant that this claim fails as a matter of law because Plaintiff has failed to establish a prima facie case.  As stated above, to establish a prima facie case of ADEA discrimination, a plaintiff must show:  "(1) that he was a member of the protected group of persons between the ages of forty and seventy; (2) that he was subject to adverse employment action; (3) *that a substantially younger person filled the position that he sought* or from which he was discharged; and (4) that he was qualified to do the job for which he was rejected."  Turlington v. Atlanta Gas Light Co., 135 F.3d 1428, 1432 (11th Cir. 1998) (emphasis added).  Because it is undisputed that Mr. Sweitzer was sixty (60) years old at the time

20

he was hired, and thus substantially *older* than Plaintiff, Plaintiff cannot show

that "a substantially younger person filled the position that he sought."[11]  Given

Plaintiff's failure to establish a prima facie case,  Defendant is entitled to

judgment as a matter of law on Plaintiff's ADEA discrimination claim based on

the 2011 selection of Mr. Sweitzer for the Data Center Manager position.

> B.    ADEA Retaliation

Plaintiff also claims that Defendant retaliated against him in violation of

the ADEA for filing a Charge of Discrimination with the EEOC.  Plaintiff

claims that this retaliation occurred in two separate ways: first, through

Defendant's refusal to award Plaintiff a merit increase in salary in March of

2010, and, second, through Defendant's failure to select Plaintiff for the Data

Center Manager position in 2011.  The Court sets out the legal principles

governing claims for ADEA retaliation before considering Defendant's

---

[11] The Court also notes that Plaintiff has failed to show that he was qualified for the Data Center Manager position as it existed in 2011.  Plaintiff does not dispute that one of the most important qualifications of the newly-designed Data Center Manager position was multiple years of full-time experience managing a large data center.  Nor does Plaintiff dispute that no UPS employee had sufficient experience to be qualified for the position.  Thus, Plaintiff has failed to make a prima facie case of discrimination for the added reason that he was failed to show he was qualified for the position as it existed when Mr. Sweitzer was hired.

argument that it is entitled to judgment as a matter of law on Plaintiff's retaliation claims.

### 1. Legal Principles

The same burden-shifting framework that governs ADEA discrimination claims governs claims for ADEA retaliation. <u>Hairston v. Gainesville Sun Publ'g Co.</u>, 9 F.3d 913, 919 (11th Cir. 1993); <u>Drago v. Jenne</u>, 453 F.3d 1301, 1307 (11th Cir. 2006). Thus, as explained in Part II.A.1., <u>supra</u>, the plaintiff bears the initial burden of establishing a <u>prima facie</u> case. <u>Drago</u>, 453 F.3d at 1307. To establish a <u>prima facie</u> case of ADEA retaliation, the plaintiff must show that: "(1) he engaged in statutorily protected conduct; (2) he was adversely affected by an employment decision; and (3) there was a causal connection between the statutorily protected conduct and the adverse employment decision." <u>Id.</u> "Only after the plaintiff makes this <u>prima facie</u> case of discriminatory retaliation does the burden shift to the defendant to rebut the presumption of retaliation by producing legitimate reasons for the adverse employment action." <u>Id.</u> "If the defendant carries this burden of production, the presumption raised by the <u>prima facie</u> case is rebutted and drops from the case." <u>Id.</u> (internal quotations and citation omitted). To survive summary

AO 72A
(Rev.8/82)

judgment, the plaintiff must then produce sufficient evidence from which a reasonable trier of fact could find the defendant's proffered nondiscriminatory reason to be pretextual. Hairston, 9 F.3d at 921.

    *2. Analysis*

### i. Denial of Merit Increase in March 2010

Plaintiff argues that Defendant retaliated against him for expressing his intention of filing a Charge of Discrimination with the EEOC by denying him a merit increase in March of 2010. (Pl.'s Resp., Dkt. [48] at 19.) Defendant moves for summary judgment on this claim, arguing that Plaintiff has failed to show a causal connection between the denial of his merit increase and Plaintiff's protected activity and, therefore, has failed to make a prima facie case. (Def.'s Mem., Dkt. [43-1] at 24-25 of 28.) To this end, Defendant argues that Ms. Johnson, the sole decision-maker with respect to the merit increase, was unaware of the protected activity (i.e., Plaintiff's expression of intent to file an EEOC charge) at the time she denied him a merit increase. (Id.)

Defendant further argues that even if Plaintiff had established a prima facie case, Defendant has offered a legitimate, nondiscriminatory reason for its decision to deny Plaintiff a merit increase. (Id. at 25.) In particular, Defendant

AO 72A
(Rev.8/82)

argues that it denied Plaintiff a merit increase in March of 2010 because Plaintiff's salary at the time was the maximum permitted for his grade level. (Id.)  Finally, Defendant argues that Plaintiff can point to no evidence that this reason is pretextual.  (Id.)

Plaintiff argues that the close proximity in time between his protected activity and the denial of his merit increase is sufficient to demonstrate a causal connection between the two.  (Pl.'s Resp., Dkt. [48] at 20.)  Plaintiff is correct that in certain cases, the burden of causation can be met by demonstrating "close temporal proximity between the statutorily protected activity and the adverse employment action."  Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1364 (11th Cir. 2007).  However, it is also clear, as Defendant argues, that to establish the requisite causal connection, the plaintiff must show that the decision-maker was aware of the plaintiff's protected activity at the time of the adverse employment action.  See, e.g, Brungart v. BellSouth Telecomms., Inc., 231 F.3d 791, 799 (11th Cir. 2000) ("Proximity in time is sufficient to raise an inference of causation.  However, there is this exception: temporal proximity alone is insufficient to create a genuine issue of fact as to causal connection where there is unrebutted evidence that the decision maker did not have

knowledge that the employee engaged in protected conduct."); <u>Clover v. Total</u>

<u>Sys. Servs., Inc.</u>, 176 F.3d 1346, 1354 (11th Cir. 1999) ("At a minimum, a

plaintiff must generally establish that the employer was actually aware of the

protected expression at the time it took adverse employment action.").

　　　Plaintiff does not dispute that Ms. Johnson was unaware of Plaintiff's

protected expression at the time his merit increase was denied.  (Pl.'s Resp.,

Dkt. [48] at 20-21; <u>see also</u> footnote 7, <u>supra</u>.)  Plaintiff argues, however, that

Ms. Johnson was not the decision-maker responsible for denying the merit

increase.  (<u>See</u> Pl.'s Resp., Dkt. [48] at 20 ("[Defendant] claims that Laurie

Johnson was the decision-maker, however, that is contrary to Mr. McGlothlin's

testimony and common sense.").)  In support of this argument, Plaintiff points

to Mr. McGlothlin's deposition testimony that "[he] think[s] from a process

standpoint [that merit increases] are signed off by all levels of management."[12]

---

[12] Plaintiff also contends that Ms. Johnson could not have been the decision-maker because she retired one day after the merit increase was denied:  "It seems very unlikely that one of Ms. Johnson's last acts at UPS was to deny [Plaintiff] his merit increase and at a minimum creates a genuine issue of fact."  (<u>Id.</u> at 20-21 (citing Johnson Decl., Dkt. [43-4] ¶ 3).)  Plaintiff plainly is mistaken as to the facts. Plaintiff's merit increase was denied in March of 2010; Ms. Johnson did not retire, however, until April 1, *2011*, at least one year after the decision was made.  (Johnson Decl., Dkt. [43-4] ¶ 3.)

(Id. (citing McGlothlin Dep., Dkt. [50] at 40:17-19).)  Finally, Plaintiff argues

that he has demonstrated Defendant's proffered reason for the denial of his

merit increase–i.e., that his salary in 2010 was at the maximum level

permitted–to be pretextual because he "received a merit increase in 2011, after

being told he was at his maximum level in 2010 . . . ."  (Id. at 21.)

The Court agrees with Defendant that Plaintiff has failed to establish a

prima facie case of retaliation because he has not shown a causal connection

between his protected expression and the denial of his merit increase.  Ms.

Johnson declared that she was the individual responsible for denying the merit

increase.  (Johnson Decl., Dkt. [43-4] ¶ 23.)  The testimony of Mr.

McGlothlin–that he believed all levels of management signed off on merit

increases–is insufficient to create a genuine factual dispute as to whether Ms.

Johnson was the relevant decision-maker.  Because it is thus uncontroverted

that Ms. Johnson was the decision-maker, and because Plaintiff does not dispute

that Ms. Johnson was unaware of Plaintiff's protected expression at the time the

merit increase was denied, Plaintiff has failed to show a causal connection

between his protected activity and the denial of his merit increase.  See, e.g.,

Brungart, 231 F.3d at 799 ("A decision maker cannot have been motivated to

retaliate by something unknown to him."). Accordingly, Plaintiff has failed to establish a <u>prima facie</u> case, and Defendant is entitled to judgment as a matter of law.

The Court further finds that even if Plaintiff had established a <u>prima facie</u> case, Defendant still would be entitled to summary judgment because Plaintiff has not shown that Defendant's legitimate, nondiscriminatory reason for denying Plaintiff a merit increase–i.e., that his salary was already at the maximum level of the grade 81 salary band–is a pretext for retaliation. As set out in the Background section, <u>supra</u>, Plaintiff does not dispute that when he was reclassified from the 91 to 81 grade level in 2009, his salary was set at the maximum level permitted by the grade 81 salary band applicable to employees in Georgia. Defendant explains that when the request was made for Plaintiff's merit increase in March of 2010, Plaintiff's salary was still at the maximum level permitted because the grade 81 salary band had not increased from 2009 to 2010. (Def.'s Mem., Dkt. [43-1] at 25 of 28; Johnson Decl., Dkt. [43-4] ¶ 23.) Accordingly, Defendant explains, the request was denied. (Def.'s Mem., Dkt. [43-1] at 25 of 28; Johnson Decl., Dkt. [43-4] ¶ 23.)

AO 72A
(Rev.8/82)

Plaintiff argues this reason is merely pretextual because he "received a merit increase in 2011, after being told that he was at his maximum level in 2010 . . . ." (Pl.'s Resp., Dkt. [48] at 21.) Defendant explains, however, that Plaintiff became eligible for a merit increase in 2011 because the applicable salary band increased from 2010 to 2011; as a result, Plaintiff's salary was not at the maximum level permitted by the salary band when merit increases were awarded in 2011. (Def.'s Reply, Dkt. [54] at 11-12 of 18.) (See also Decl. of Bernie Collins ("Collins Decl."), Dkt. [54-1] ¶ 3 ("Jobs in the IS organization are grouped by grade level. Each grade level of management jobs has a corresponding salary band that is applicable to all jobs at the grade level in a particular geographic location. In some years, the salary bands remain flat."); id. ¶ 4 ("The maximum level of the salary band applicable to Grade 81 employees in Georgia did not increase from 2009 to 2010. However, the maximum level of the salary band applicable to Grade 81 employees in Georgia was increased in 2011. [Plaintiff] was eligible for a merit increase in 2011 because his salary at the time of the merit increase process was below the 2011 maximum level of the applicable salary band.").) Plaintiff plainly has failed to make any showing of pretext.

AO 72A
(Rev.8/82)

In sum, for the reasons stated above, Defendant is entitled to judgment as a matter of law on Plaintiff's claim for ADEA retaliation based on the denial of his merit increase in March of 2010.

### ii. Selection of Mr. Sweitzer as Data Center Manager in 2011

Plaintiff also claims that Defendant retaliated against him for filing an EEOC Charge by not selecting him for the Data Center Manager position in 2011, when Mr. Sweitzer was hired instead. (Pl.'s Resp., Dkt. [48] at 21-24.) Defendant moves for summary judgment first on grounds that Plaintiff has failed to establish a causal connection between his protected activity and the hiring decision and therefore has failed to make out a _prima_ _facie_ case. (Def.'s Mem., Dkt. [43-1] at 26 of 28.) In this regard, Defendant points out that Mr. Sweitzer was hired more than a year after Plaintiff filed his EEOC charge in April of 2010. Defendant also argues that even if Plaintiff had made a _prima_ _facie_ case, Plaintiff cannot show that Defendant's reason for hiring Mr. Sweizter–i.e., his superior qualifications–is pretextual. (Id.)

Plaintiff concedes that the hiring decision took place more than a year after he filed a Charge with the EEOC. (Pl.'s Resp., Dkt. [48] at 23.) Plaintiff

AO 72A
(Rev.8/82)

contends, however, that his delay was due in large part to Defendant "rewriting the position description in order to exclude Mr. Maust." (Id.) He continues, "[Defendant] claims that when Mr. Ramos vacated the position, that this gave [Defendant] the opportunity to rewrite the position description. What UPS, in fact, did was rewrite the position description to intentionally exclude [Plaintiff] because he filed an EEOC Charge of Discrimination."[13] (Id. at 23-24.)

The Court agrees with Defendant that Plaintiff has failed to establish an essential element of his prima facie case, causation, and has failed to put forward any evidence of pretext. With respect to causation, it is well-settled that where the temporal proximity between the protected expression and the adverse employment action is not "very close," a plaintiff must present additional evidence to establish the requisite causal connection. Thomas, 506 F.3d at 1364. In this case, more than a year elapsed between the filing of

_____

[13] Plaintiff also argues that genuine issues of fact exist regarding the reason he was not selected for the position in 2011 in light of a statement made by Curtis Clark (a second-level manager (Johnson Decl., Dkt. [43-4] ¶ 13)) in November of 2009, after Mr. Ramos was hired but *before* Plaintiff filed his EEOC Charge. (Pl.'s Resp., Dkt. [48] at 23.) According to Plaintiff, Mr. Clark stated that sometimes people get lawyers and that "always ends badly." (Id. at 7, 23.) Plaintiff cannot rely on this comment to establish causation or pretext, however, as the comment was made approximately five months before Plaintiff filed his EEOC charge and over a year before Mr. Sweitzer was hired.

Plaintiff's EEOC Charge and the hiring of Mr. Sweitzer, and Plaintiff has offered no other evidence to establish a causal connection between the two events.

Plaintiff contends that the temporal delay was due to the fact that Defendant restructured the Data Center Manager position intentionally to exclude Plaintiff. Plaintiff, however, cites no evidence to support this assertion, and the Court finds it implausible. Plaintiff concedes that after it was restructured, no UPS employee had the management experience necessary to be eligible for the position and that none was interviewed. It strains credulity to believe that Defendant would intentionally exclude all of its employees in order to retaliate solely against Plaintiff.

Even if Plaintiff had made out a prima facie case, Defendant still would be entitled to summary judgment because Plaintiff has failed to show pretext. Defendant explains that it redesigned the Data Center Manager position to make it more strategic and consistent with industry standards for data center management. (Def.'s Reply, Dkt. [54] at 14 of 18.) As explained above, Plaintiff argues that the real reason Defendant redesigned the position was to exclude Plaintiff from it in retaliation for his protected activity. As explained

31

above, however, this assertion is not supported by evidence and is implausible. Moreover, Plaintiff has presented no evidence that the newly-designed position was not, in fact, more strategic or in-line with industry standards. Accordingly, no reasonable jury could conclude, based on this summary judgment record, that Defendant's proffered reason for redesigning the Data Center Manger position (and then hiring Mr. Sweitzer) was a pretext for retaliation.

In sum, for the reasons stated above, Defendant is entitled to judgment as a matter of law on Plaintiff's claim for ADEA retaliation based on the hiring of Mr. Sweitzer for the redesigned Data Center Manager position in 2011.

## Conclusion

In accordance with the foregoing, Defendant's Motion for Summary Judgment [43] is **GRANTED**.

**SO ORDERED**, this __14th__ day of September, 2012.


_____
RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)